IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID FINK, *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CORPORATE LIAISON, LLC, *et al.*, | : | NO. 12-3431 |
| Defendants. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                       APRIL 23, 2013

Plaintiffs David Fink and Jerome Keough claim that Corporate Liaison, Susan Werth, and Citibank are responsible for losses incurred when Messrs. Fink and Keough loaned $300,000 to Corporate Liaison and Ms. Werth (the "Werth Defendants") and were never repaid. In addition to a number of claims against the Werth Defendants, Plaintiffs claim that Citibank was negligent in failing to protect them from the Werth Defendants' fraud. Citibank has moved to dismiss the sole count against it, and the Court will grant that motion for the reasons presented below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Many of the facts set forth in the Amended Complaint have nothing to do with Citibank's alleged involvement in the events underlying the claims. Therefore, the following recitation of facts will include only those facts necessary to resolve the pending motion, *i.e.*, those relating to the claim against Citibank.

In early 2012, Messrs. Fink and Keough agreed to provide a short term loan of $300,000 to Corporate Liaison.[1] On February 29, 2012, they wired the money to a Citibank account that belonged to the Werth Defendants. The loan was to be repaid on or before March 16, 2012. As security for the loan, the Werth Defendants presented to the two lenders what appeared to be a

---
[1] Susan Werth is a principal of that company.

$390,000 Citibank letter of credit, which the Werth Defendants said was backed by a $1,000,000 Citibank Certificate of Deposit.  On March 16, 2012, the Werth Defendants failed to pay back the loan as agreed.  Instead, they told the Plaintiffs that the Citibank account to which the funds had been wired was frozen due to the Patriot Act, and the Werth Defendants further said that the account would be unfrozen by March 21, 2012.  Then, on March 21, 2012, Ms. Werth told Messrs. Fink and Keough that Citibank had closed the account.

In an effort to recoup their losses, the lenders attempted to collect on the letter of credit.  To that end, they called Citibank and spoke with Citibank employee Steven Gamp.  Mr. Gamp told them that Citibank had never employed anyone with the name of the person who endorsed the supposed Citibank letter of credit.  He said that if the letter of credit purported to be from Citibank, it was not valid.  He also volunteered that there was no Citibank Certificate of Deposit, even though Plaintiffs apparently had not mentioned a CD.  Citibank has not honored the letter of credit.

After further unsuccessful attempts to collect on their loan, Plaintiffs filed this suit against the Werth Defendants and Citibank, originally asserting several counts against Citibank, including breach of implied contract, breach of fiduciary duty, and breach of good faith and fair dealing.  Citibank moved to dismiss all of the counts against it, and Messrs. Fink and Keough responded by filing an Amended Complaint.  The Amended Complaint states only one claim against Citibank – a claim for negligence.  Apparently forgetting that in recent years the word "platform" has fallen into use as a metaphor rather than a physical location, Plaintiffs now allege that Citibank breached a duty to them to prevent people like the Werth Defendants from using the Citibank financial "platform" for fraudulent purposes, to detect and eliminate such fraudulent accounts, and to train and supervise its employees to keep the financial platform free of

fraudulent accounts and to communicate information about such accounts appropriately with other departments within Citibank, particularly whichever department paid the Plaintiffs' wire. Citibank now moves to dismiss this negligence count.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, ––– U.S. –––, –––, 131 S.Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and

3

accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), or a plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

**DISCUSSION**

Citibank argues that in the absence of any business or legal relationship with Plaintiffs, it had no duty to them. It cites *Eisenberg v. Wachovia Bank*, 301 F.3d 220 (4th Cir. 2002), in support. In that case, the plaintiff was duped into believing that he was investing money with someone at Bear Stearns, a large financial securities firm. *Id.* at 222. The perpetrator of the fraud, one Douglas Reid, set up an account at the defendant-bank bearing the name "Douglas Walter Reid dba Bear Stearns." After the plaintiff wired money to that account, he learned that Mr. Reid had no affiliation with Bear Stearns and, in fact, had simply defrauded him. The

plaintiff then sued the bank, claiming that it was negligent in allowing Mr. Reid to open the account in that name without ensuring he was authorized to do so and also in generally allowing the fraudulent use of its accounts. *Id.* In holding that the bank had no duty to the plaintiff, the Fourth Circuit Court of Appeals cited numerous cases from jurisdictions across the country in which courts have held that, absent special circumstances, banks do not have a duty of care to noncustomers with whom they have no direct relationship. *See id.* at 225. *See also Commerce Bank/PA v. First Union Nat'l Bank*, 911 A.2d 133, 138-41 (Pa. Super. 2006) (holding that a bank's duty depends on the relationship between the parties at the relevant time; one bank did not have a duty to a second to inform it of a customer's check kiting scheme in the absence of any contractual or other relationship).

Plaintiffs counter that by transacting business on Citibank's financial metaphorical platform, they undergo a metamorphosis and become "business invitees" of Citibank entitled to the same protections that business invitees receive in the context of premises liability (*i.e.,* a duty and a well-defined standard of care). They also argue that because Citibank had knowledge of the fraud, as revealed by Mr. Gamp's unprompted reference to the nonexistence of a Citibank CD, this knowledge created a duty and distinguishes this case from the cases cited by Citibank.

First, Plaintiffs cite to no cases, nor do there appear to be any cases in Pennsylvania or elsewhere, that extend the concrete business invitee concept beyond premises liability. Likewise, they provide the Court with no compelling reason to ignore this complete lack of precedent in order to create a novel new relationship that conjures a resulting set of duties where none has heretofore existed. Indeed, if this Court were to extend this premises liability doctrine beyond physical premises, the Court would singlehandedly create a host of novel liability issues

facing not just banks, but potentially untold numbers of businesses that operate electronically. This the Court will not do.

As to Plaintiffs' argument that Citibank's alleged knowledge of the fraud somehow changes the relationship, the cases cited by Messrs. Fink and Keough to support a finding, as a result, that Citibank owed them a duty of care involve circumstances not present here and thus are readily and meaningfully distinguishable. For instance, the cases they cite turn on obvious mishandling of funds in a trust account, *see, e.g., Lerner v. Fleet Bank*, 459 F.3d 273 (2d Cir. 2006), apparent fraud at the time of a specific transaction (*i.e.*, information on the face of a check that reveals that the person attempting to cash it is not authorized to do so), *see, e.g., Joffe v. United Cal. Bank*, 141 Cal. App. 3d 541 (1983), or fraud committed directly by employees of the bank, *see, e.g., Guardian Angel Credit Union v. MetaBank*, Civil Action No. 08-261, 2011 WL 2784078 (D.N.H. July 14, 2011).

Moreover, even if similar additional circumstances had been present in this case, Plaintiffs have pleaded no facts that would tend to show that Citibank knew about the alleged fraud before or even at the time Plaintiffs wired the money and Citibank accepted it into the Werth Defendants' account, that Citibank knew that the alleged fraudulent scheme involved the Plaintiffs in particular before it was contacted by the Plaintiffs, or that Citibank otherwise had some special relationship to Plaintiffs that would create a duty. While it is true that the Court must draw all reasonable inferences in favor of Plaintiffs at this stage of the case, none of the facts alleged allow the Court to infer that Citibank had the sort of relationship with the Plaintiffs from which any such recognized or recognizable duty would arise. Without a duty of care to Plaintiffs, Citibank cannot be held liable under a negligence theory.

**CONCLUSION**

For the foregoing reasons, the Court will grant Citibank's motion to dismiss. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge